# UNITED STATES DISTRICT COURT

NORTHERN _____ DISTRICT OF ___ILLINOIS, EASTERN DIVISION___

UNITED STATES OF AMERICA

v.

RANDY PINE

**F I L E D**
2-20-08
FEB 2 0 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**Under Seal**   MAGISTRATE JUDGE NOLAN

**CRIMINAL COMPLAINT**

**CASE NUMBER:**

# 08CR    0146

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.  On or about December 19, 2006, in Will County, in the Northern District of Illinois, defendant did,

knowingly and intentionally possess with intent to distribute controlled substances, namely, in excess of 500 grams of mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance,

in violation of Title ___21___ United States Code, Section 841(a)(1).

I further state that I am a  Special Agent with the Federal Bureau of Investigation  and that this complaint is based on the following facts:

See attached affidavit.

Continued on the attached sheet and made a part hereof:  _X_ Yes      ____ No

X _____
Signature of Complainant

Sworn to before me and subscribed in my presence,

February 20, 2008 _____      at    Chicago, Illinois _____
Date                                                                              City and State

NAN R. NOLAN, U.S. Magistrate Judge _____
Name & Title of Judicial Officer

Nan R. Nolan _____
Signature of Judicial Officer

STATE OF ILLINOIS   )
                     )    SS
COUNTY OF COOK     )

# A F F I D A V I T

I, Michael J. Culloton, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, having been duly sworn under oath, states as follows:

## I.    INTRODUCTION

1.    I am a Special Agent ("SA") of the Federal Bureau of Investigation("FBI"), United States Department of Justice, and have been so employed for approximately ten years.    I am currently assigned to the West Suburban Gang Task Force.    As part of my official duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843 and 846, and federal firearms laws including, but not limited to, Title 18, United States Code, Sections 922 and 924(c).

2.    During my employment as an FBI Special Agent, I have received specialized training in the means and methods by which drug traffickers unlawfully manufacture, import, distribute and possess with intent to distribute controlled substances, including, but not limited to, the use of mobile telephones and code words to conduct drug trafficking activities; and the enforcement of laws concerning the trafficking of controlled substances.

3.    I have also received training regarding, and have

personally participated in, various types of investigative activity, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning the unlawful trafficking in controlled substances and the unlawful possession and use of firearms; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; (g) the court-authorized interception of both wire and electronic communications (i.e., Title III wiretaps); and (h) the handling and maintenance of evidence.

4.    The statements made in this Affidavit are based in part on: (a) my personal participation in this investigation; (b) information provided to me by other law enforcement officers and witnesses; (c) laboratory analysis reports; and (d) the training and experience of myself and other law enforcement agents and officers.

5.    This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Complaint charging that on or about December 19, 2006, RANDY PINE did knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 500 grams of mixtures containing cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

6.    Since this Affidavit is for the limited purpose of

establishing probable cause to support the Criminal Complaint against RANDY PINE, for a violation of Title 21, United States Code, Section 841(a)(1), it contains only a summary of relevant facts. I have not included each and every fact known to me concerning the individuals and the events described in this Affidavit.

### FACTUAL BASIS SUPPORTING PROBABLE CAUSE

7.   On December 19, 2006, surveillance was established on Luis Pacheco in conjunction with an ongoing investigation of narcotics trafficking. At approximately 3:30 p.m., surveillance agents ("surveillance") followed Pacheco, who was driving a Ford Expedition (hereinafter "the Expedition"), from 4910 North Karlov to 15238 S. Rosarie Drive in Homer Glen, Illinois (the "Rosarie Drive residence"). Upon Pacheco's arrival at the Rosarie Drive residence, an Elgin Police Department Detective observed Pacheco exit the Expedition and go to the rear hatch of the truck where he removed a yellowish-brown envelope from the back of the truck.

8.   Surveillance observed PACHECO as he went inside the Rosarie Drive residence carrying the yellowish-brown envelope. This envelope appeared to be the same type of envelope that surveillance observed that Angel Vega, an associate of Pacheco's, had in his possession on September 6, 2006, and the same type of envelope containing cocaine recovered during the execution of a search warrant at 507 Reyerson, an apartment believed to be used by Angel Vega to store, "cut" and repackage cocaine.

9.    While PACHECO was inside the Rosarie Drive residence, another vehicle pulled into the driveway.  Surveillance observed a white male, later identified as Individual A, enter the Rosarie Drive residence and exit approximately three minutes later.  As Individual A drove away from the Rosarie Drive residence, two Elgin Police Detectives conducted an investigative stop on the vehicle driven by Individual A.  Individual A was asked to step out of the vehicle and was advised of some of the agents' observations leading up to the stop.  Individual A replied words to the effect, "let me be honest with you" and handed one of the detectives approximately 1.2 grams of cocaine out of his front shirt pocket.  Individual A told the detectives that he had just purchased the cocaine from "Randy" for $100.  Individual A further stated that he had been buying cocaine from "Randy" for more than twenty years.  The cocaine was seized and Individual A was allowed to leave without being charged.

10.    Agents maintained surveillance on the Rosarie Drive residence.  At approximately 4:50 p.m., surveillance observed Pacheco leave the Rosarie Drive residence carrying a jacket in his hand and enter the Ford Expedition.  As Pacheco departed the area, law enforcement conducted an investigative stop of the vehicle.  The jacket that agents observed Pacheco wearing as he entered the residence was recovered from the vehicle.  Upon examining the jacket, agents found approximately $5,340 in United States currency.  Agents further conducted a pat down search of Pacheco and further

searched the Ford Expedition. Agents did not recover from Pacheco or the vehicle the envelope that they observed Pacheco remove from the rear hatch of the vehicle prior to entering the Rosarie Drive residence.

11. Law Enforcement subsequently went to the Rosarie Drive residence. After identifying themselves as law enforcement and being granted access to the residence, agents spoke with the owner of the residence who identified himself as RANDY PINE. PINE was asked for consent to search the residence. PINE initially offered to get the drugs and turn them over to one of the agents. The agent asked PINE if he would instead tell the agents where the drugs were located so that they could recover them. In response, PINE motioned toward some kitchen cabinets underneath a countertop and stated that the drugs were in there. Upon opening a cabinet, agents observed an envelope sitting next to a glass jar that appeared to be the same envelope that PACHECO was observed carrying into the residence earlier that evening (see paragraph 8). The glass jar contained five plastic bags of suspect cocaine. The yellow envelope contained three plastic bags of suspect cocaine. Agents further observed and recovered $8252 in United States currency on the countertop above the cabinet where the suspect cocaine was recovered.

12. The suspect cocaine was subsequently submitted to the DEA laboratory for chemical analysis. The substance recovered from the five plastic bags placed in the glass jar tested positive for the presence of cocaine and weighed approximately 221.7 grams. The

substance recovered from the yellow enveloped further tested positive for the presence of cocaine and weighed approximately 300.9 grams. Three fingerprints, identified as PACHECO's, were detected on the yellowish-brown mailing envelope which contained approximately 221.7 grams of cocaine, recovered during the search at the Rosarie Drive residence.

13.    After agents recovered the suspect cocaine and cash referred to in paragraph 11, PINE signed a written consent to search form, and agents recovered the following additional items:    (a) a Smith and Wesson .44 Magnum Model 292, bearing serial number N336663; (b) six rounds of .44 caliber ammunition; and (c) a Sig Sauer .357 automatic, bearing serial number SP0001108, in a case with two empty magazines.

## CONCLUSION

Based on my training and experience, there exists probable cause to believe that on December 19, 2006, RANDY PINE, did knowingly and intentionally possess with intent to distribute a controlled substance, namely, in excess of 500 grams of a mixture or substance containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).

MICHAEL J. CULLOTON
Special Agent
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO BEFORE ME
this 20th day of February, 2008

HONORABLE NAN R. NOLAN
United States Magistrate Judge