IN THE
IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

vs.                                                                           No.     08 CR 146
                                                                            Honorable Wayne Anderson
**RANDY PINE,**

        **Defendant.**

### MOTION TO SUPPRESS EVIDENCE

NOW COMES Defendant **RANDY PINE**, by his attorney EDMUND P. WANDERLING, and hereby moves this Honorable Court to suppress evidence obtained after the illegal entry into Mr. Pine's home and the illegal search therein. Federal Bureau of Investigation (FBI) Agents and Elgin Police Department Officers entered and searched Mr. Pine's home without a warrant, consent or exigent circumstances, and arrested him without probable cause.

### I. STATEMENTS OF FACTS

On December 19, 2006, surveillance was established on a Luis Pacheco in conjunction with an ongoing investigation of narcotics trafficking of Luis Pacheco. At approximately 3:30 p.m., surveillance agents followed Pacheco, who was driving a Ford Expedition, from 4910 North Karlov, Chicago, Illinois, to 15238 S. Rosarie Drive in Homer Glen, Illinois. Upon Pacheco's arrival at the Rosarie Drive residence, an Elgin Police Department Detective observed Pacheco exit the Expedition and go to the rear hatch of the truck where he removed a yellowish-brown envelope from the back of the truck.

Surveillance observed Pacheco as he went inside the Rosarie Drive residence carrying

this yellowish-brown envelope. This envelope allegedly appeared to be the same type of envelope that prior surveillance observed Angel Vega, an alleged associate of Pacheco's, have in his possession on September 6, 2006, over three (3) months prior to this date, and allegedly the same type of envelope containing cocaine recovered during the execution of a search warrant at 507 Reyerson, an apartment believed to be used by Angel Vega.

Agent Culloton alleges that while Pacheco was inside te Rosarie Drive residence, another vehicle pulled into the driveway. Surveillance observed a white male, later identified as Individual A, enter the Rosarie Drive residence and exit approximately three minutes later. As Individual A drove away from the Rosarie Drive residence, two Elgin Police Detectives conducted an investigative stop on the vehicle driven by Individual A. Individual A was asked to step out of the vehicle and was advised of some of the agents' observations leading up to the stop. Individual A replied words to the effect, "let me be honest with you" and handed one of the detectives approximately 1.2 grams of cocaine out of his front shirt pocket. Individual A told the detectives that he had just purchased the cocaine from "Randy" for $100. Individual A further stated that he had been buying cocaine from "Randy" for more than twenty years. The cocaine was seized and Individual A was allowed to leave without being charged.

Agents continued to maintain surveillance on the Rosarie Drive residence. At approximately 4:50 p.m., surveillance observed Pacheco leave the Rosarie Drive residence carrying a jacket in his hand and enter his Ford Expedition. As Pacheco departed the area, law enforcement stopped his vehicle. The jacket that agents observed Pacheco wearing as he entered the residence was recovered from the vehicle. Upon examining the jacket, agents found approximately $5,340 in United States currency.
The Agents conducted a pat down search of Pacheco and further searched the Ford Expedition. Agents did not recover from Pacheco or the vehicle the envelope that they

allegedly observed Pacheco remove from the rear hatch of the vehicle prior to entering the Rosarie Drive residence.[1]

Thereafter, these law enforcement officers returned to 15238 S. Rosarie Drive. Agent Culloton's affidavit represents that after identifying themselves as law enforcement and being granted access to the residence, they spoke with the owner, Randy Pine and asked for consent to search his residence. Per Agent Culloton's affidavit, rather than consenting, Mr. Pine offered to get the drugs for the agents. The agent then asked Mr. Pine instead if he would tell the agents where the drugs were located so they could recover them. Mr. Pine allegedly motioned toward some kitchen cabinets underneath a countertop and stated the drugs were in there.

What Agent Culloton's affidavit fails to mention but what is referenced in the FBI 302's in this cause is how the law enforcement officers gained entry into Mr. Pine's home. Per the 302's, the Agents believing a delivery of controlled substance occurred went to 15238 S. Rosarie and went to the door using a "ruse" that they were looking for a fugitive. When an Agent Lapp showed the picture to Pine he immediately said he did not recognize the individual. Agent Lapp then mentioned they had followed a vehicle to his residence and Pine began to walk away from the door. Then five (5) agents entered Mr. Pine's home through an unlocked storm door. The Agents asked to speak to Mr. Pine and thereafter he offered to get the drugs and the Agents said just tell us where they are and

---

[1] The facts stated up to this point are the facts stated by Special Agent Michael J. Culloton in his affidavit in support of the initial complaint in this cause. (See Agent Culloton's affidavit attached as Exhibit 1)

3

Pine motioned toward some kitchen cabinets and said the drugs were there. It was not until after finding the drugs, that the Agents asked Mr. Pine to sign a consent to search which he did in fact sign.

What occurred per Eula Teel Pine is that when these agents returned to Mr. Pine's home, they rang the doorbell and she answered the door.[2] When she answered the door, there was a male and female at the door. Ms. Teel partially opened the door and spoke with these officers as she held her two (2) dogs in the house.

The male officer was holding a clipboard with a sketch/flyer which had a picture of a man in a caption which said "America's Most Wanted" on it. He asked Ms. Teel if she saw anybody resembling this person. She told the officer "no". She then called to Randy (the defendant) to come see this picture. Randy was walking up a small flight of stairs at the time the male pulled the door opened and both the male and female pushed Eula to the side and came in the house. Thereafter at least four (4) other agents came into the home. The agents kept asking where's the yellow envelope and said that someone just dropped off a yellow envelope. Eula was grabbed and pushed back by the front door. She was ordered to stay there with the female officer, however, Eula was not handcuffed.

Randy was taken to the kitchen and told to sit down. Randy was not handcuffed. At this point, there were at least six agents in the house. The agents kept asking Randy, where is the envelope, we know it is here. Randy told them he didn't know what they were talking about. Randy went on and told them he had a bad heart and other health issues. After 20 minutes of constant questioning, Randy told the agents the envelope was in the cabinet. At this point in time did neither Eula Teel nor Randy Pine ever consented to these agents entering or searching into their house. After the cocaine was recovered, Mr. Pine was then asked to sign a consent to search his home and at that time he did in fact sign a consent to

---

[2] Eula Teel has since married Mr. Pine and is now Eula Teel Pine.

search.³  (See Eula Teel Pine's affidavit attached hereto as Exhibit 2).

## II.  ARGUMENT

1.  THE FBI AGENTS INITIAL ENTRY INTO RANDY PINE'S HOME WAS AN ILLEGAL ENTRY AND ANY RESULTING CONSENT IS INVALID.

In this cause it is undisputed that the Agents entered Randy Pine's home without a search warrant.  When a law enforcement agent enters an individuals home without a search warrant, such an entry is valid if such is a consensual entry or because of exigent circumstances.

The Fourth Amendment of the United States Constitution very specifically designates a person's home as a constitutionally protected area.  At the heart of the Fourth Amendment stands the right of a person "to retreat into his home and there be free from unreasonable governmental intrusion." _Silverman v. United States_, 365 U.S. 505, 511 (1961).

Rule 41 of the Federal Rules of Criminal Procedure, realizes this protection by requiring that an impartial magistrate determine from an affidavit whether information provided by law enforcement officers justifies the issuing of a search warrant.  "Were federal officers free to search without a warrant merely upon probable cause to believe that certain articles were within a home, the provisions of the Fourth Amendment would become empty phrases, and the protection it affords largely nullified." _Jones v. United States_, 357 U.S. 493, 497-498 (1958), cited by _Payton v. New York_, footnote 26.

In _Payton v. New York_, 445 U.S. 573 (1980), the Supreme Court articulated a rule that "[t]he Fourth Amendment ... prohibits the police from making a warrantless and non-consensual entry into a suspect's home in order to make a routine felony arrest."  If there is

---

³At paragraph 13 of Agent Culloton's affidavit, he states that the consent was signed after the cocaine was recovered.

no warrant, a non-consensual entry is permitted in the presence of exigent circumstances. *Id.* at 573. The Court states that "[t]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed," and that this entry is "too substantial an invasion to allow without a warrant, in the absence of exigent circumstances, even when ... probable cause is present." *Id.* at 573. See also <u>U.S. v. Rivera</u>, 248 F.3d 677, 680 (7th Cir. 2001).

As such, even if all of the facts as alleged by Agent Culloton's affidavit were true; to wit: the surveillance regarding the yellow envelope. Individual A's statements, and the search of Mr. Pacheco wherein a large amount of U.S. currency was recovered and no envelope was found, created probable cause, such in and of itself does not allow the Agents to enter Mr. Pine's home.

There is no allegation that the entry into Mr. Pine's home was due to exigent circumstances. The only viable basis of the entry into Mr. Pine's home is Mr. Pine's alleged consent.[4] However, this occurred after the illegal entry and after the drugs were recovered. Per the 302's, the Agents, after Mr. Pine was walking away from the door, entered his home through an unlocked storm door. They were not invited into the home nor did they ever seek consent to enter Mr. Pine's home at this point in time.

This entry is the type of governmental intrusion, the chief evil by which the Fourth Amendment protects a person against in their home.

While the Fourth Amendment's probable cause and warrant requirements do not apply where an authorized party voluntarily consents to a search. <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); <u>United States v. Melgar</u>, 227 F.3d 1038, 1041 (7th Cir. 2000), however, consent which is given during an

---

[4] Mr. Pine admits that he did execute a "Consent to Search" after the drugs were recovered and as stated in Agent Culloton's affidavit in this cause.

6

illegal detention is presumptively invalid and any evidence discovered in a subsequent search is inadmissable unless the taint of the illegal conduct is somehow dissipated. <u>United States v. Johnson</u>, 427 F.3d 1053, 1056 citing <u>United States v. Celliti</u>, 387 F.3d 618, 622-23 (7th Cir. 2004) and <u>Wong Sun v. United States</u>, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

     In this cause, while the Agent in his affidavit contends they went to Mr. Pine's home, identified themselves as law enforcement and were granted access to the residence, the 302's also clearly show that the Agents entered Mr. Pine's home not with consent or pursuant to an invite but rather they opened the door on their own and entered his home without any legal authority to do so.

     While Ms. Teel's version of the entry differs somewhat in that she alleges the Agents pushed there way into her home, which would clearly be an illegal non-consensual entry, the entry into Mr. Pine's home as set forth in the 302's was also an illegal entry. In such a case, because of this unlawful entry, any consent which was given later must be deemed involuntary. See <u>United States v. Collins</u>, 510 F.3d 697 (7th Cir. 2007). Further, consent to search that is given after an illegal entry is tainted and invalid. <u>United States v. Hodel</u>, 143 F.3d 1223, 1228 (9th Cir. 1998).

     As the Agents entry into Mr. Pine's home was illegal, any consent subsequently given must be deemed involuntary, tainted and invalid and the evidence recovered in the house must be suppressed. This entry by the Agents into Mr. Pine's home is the chief evil

in which the Fourth Amendment was meant to protect citizens in this country from the unreasonable government intrusion into one's home and the evidence recovered from this illegal search must be suppressed.

> 2. IF THE COURT DETERMINES THE INITIAL ENTRY INTO RANDY PINE'S HOME WAS VALID, THE SEARCH AND SEIZURE WHICH WAS CONDUCTED BEFORE ANY CONSENT WAS GIVEN WAS AN ILLEGAL SEARCH AND SEIZURE.

If the Court determines that the Agents entry into the Pine home was not illegal, by virtue of the Agents own affidavit and the 302's, the search and seizure of the drugs was made without any consent.

Per the Agents affidavit: "Law Enforcement subsequently went to the Rosarie Drive residence. After identifying themselves as law enforcement and being granted access to the residence, agents spoke with the owner of the residence who identified himself as RANDY PINE. PINE was asked for consent to search the residence. PINE initially offered to get the drugs and turn them over to one of the agents. The agent asked PINE if he would instead tell the agents where the drugs were located so that they could recover them. In response, PINE motioned toward some kitchen cabinets underneath a countertop and stated that the drugs were in there. Upon opening a cabinet, agents observed an envelope sitting next to a glass jar that appeared to be the same envelope that PACHECO was observed carrying into the residence earlier that evening (see paragraph 8). The glass jar contained five plastic bags of suspect cocaine. The yellow envelope contained three plastic bags of suspect cocaine. Agents further observed and recovered $8,252 in United States currency on the countertop above the cabinet where the suspect cocaine was recovered."

Even assuming the Agents legally entered into the Pine home, Agent Culloton's affidavit indicates they asked for consent; however, there was no consent even given.

8

Rather, after Mr. Pine offered to get the drugs, the Agents then asked Pine if he would instead tell the Agents where the drugs were and Pine told them.  It was not until after the drugs were recovered did the Agents ask Mr. Pine to execute a consent as evidenced by Paragraph 13 of Agent Culloton's affidavit.  Mr. Pine acquiesced to the Agents authority, he did not consent to a search of his home.  He had at least 5 agents in his home asking him where this envelope was, not asking if they could search the home.  It was not until after this agents recovered the suspect cocaine and cash referred to in paragraph 11 of the affidavit, that Pine was asked to and signed a written consent to search form.

If we review the facts as alleged in Agent Cullton's affidavit, the 302's and the facts as alleged by Eula Teel, in any of these scenarios there was no valid and voluntary consent to search prior to or at the time the drugs were recovered.  A valid search of premises may be made without a warrant and without probable cause if the person in control thereof has given his voluntary consent.  *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *United States v. Petty*, 601 F.2d 883 (5th Cir. 1979); *cert. Denied,* 445 U.S. 962 (1980); *United States v. Price*, 599 F.2d 494 (2nd Cir. 1979); *United States v. Stanley*, 597 F.2d 866 (4th Cir. 1979); *United States v. Hendriz*, 595 F.2d 883 (D.C. Cir. 1979); *United States v. Scott*, 590 F.2d 531 (3rd Cir. 1979); *United States v. Miller*, 589 F.2d 1117 (1st Cir. 1978); *cert. Denied*, 440 U.S. 958 (1979).  Consent, however, is not lightly inferred.  *United States v. Patacchia*, 602 F.2d 218 (9th Cir. 1979).  Whether voluntary consent to search has been given is a fact question for the court, *United States v. Scott*, 578 F.2d 1186 (6th Cir.), *cert. Denied*, 439 U.S. 870 (1978); and in making that decision the court must examine the totality of the circumstances, *Ohio v. Robinette*, 519 U.S. 33 (1996); *United States v. Mendenhall*, 446 U.S. 544 (1980); *Schneckloth v. Bustamonte*, 412 U.S. at 238.  The burden is on the government to prove that consent was voluntary.  *United States v. Price,*  599 F.2d 494 (2nd Cir. 1979); *United States v. Scott*, 578 F.2d 1186 (6th Cir.), *cert.*

9

*denied*, 439 U.S. 870 (1978); <u>United States v. Glasby</u>, 576 F.2d 734 (7th Cir. 1978); <u>United States v. Juarez</u>, 573 F.2d 267 (5th Cir.), *cert. denied,* 439 U.S. 915 (1978).  It has been held that the government's proof of consent must be "clear and positive".  <u>United States v. McCaleb</u>, 552 F.2d at 721.

      The facts as alleged by Agent Culloton does not show a voluntary consent by Mr. Pine.  Per Agent Cullotin, the Agents were granted access to Mr. Pine's home, however this is contradicted by the 302's when the Agents opened the door and entered Mr. Pine's home without consent.  It was not until after the entry when Mr. Pine was asked for consent to search his home.  It is clear Mr. Pine did not give consent, if we take the Agents affidavit as true, after this short conversation, Mr. Pine was going to go and get the drugs and after the Agent said " to tell them where the drugs were" thereafter, Pine told them.  It wasn't until after the search and ultimate seizure that a consent was executed by Mr. Pine.

      The facts as alleged by Eula Teel present a different picture which is more consistent with the 302's.  According to Ms. Teel:

- the doorbell rang and she answered the door

- she opened the door to the home and then partially opened the storm door and was hold her two dogs back

- at the door were two (2) individuals (agents), a female and a male.  The male was holding a clipboard with a picture of a man and on top of the picture was the caption "America's Most Wanted"

- that these agents asked Ms. Teel if she had seen the individual in the photograph to which she responded "no"

- that as Mr. Pine was walking up a small flight of stairs toward the door, Ms. Teel called to him to come look at this

- that immediately thereafter, one of the agents pulled the screen door open and the two (2) agents at the door and at least four (4) other agents rushed into their house

- that Ms. Teel was ordered to stay in the hallway near the front door with the female agent

10

- that Mr. Pine was told to sit down at the kitchen table

- that the agents repeatedly asked "where is the yellow envelope", "we know it is here"

- that Mr. Pine denied any knowledge of said envelope and said demands/questioning continued for 20 minutes

- that at no time did any agent ask either Mr. Pine nor Ms. Teel for consent to enter or search their home

- that after about 20 minutes, Mr. Pine finally told the agents where the yellow envelope was and the agents recovered said envelope.

Pursuant to Ms. Teel's statements and the 302's the entry into the home was illegal and there was no consent to search. However, if the Court finds the entry into the home was legal, there still was no consent to search at the time of the search and seizure. There was at best a request. What occurred is after this entry, is that Mr. Pine acquiesced to the police authority and told them where the drugs were located. As the burden is on the government to prove the consent was voluntary and if we review the totality of the circumstances, the government's proof of consent is not clear and positive as required by the case law as cited herein and the evidence must be suppressed.

WHEREFORE, the Defendant, RANDY PINE, prays that this motion be granted.

          Respectfully submitted,

          /s/ Edmund P. Wanderling
          EDMUND P. WANDERLING
          Attorney for RANDY PINE

EDMUND P. WANDERLING
2505 So. Des Plaines Avenue
North Riverside, Illinois 60546
(708) 443-5400